## EMMA BRUSVEN v. JOHN BALLORD, *d. b. a.* HAMLINE HOTEL, AND ANOTHER.[1]

June 2, 1944.

No. 33,755.

*Weyl & Holtz,* for relators.
*Edwin Murphy,* for respondent.

MAGNEY, JUSTICE.

*Certiorari* to review an order of the industrial commission awarding compensation to respondent.

The facts are stipulated and are as follows: Emma Brusven was employed as a maid in the hotel operated by relator John Ballord. Her duties consisted chiefly in making up the guest rooms. The wages paid her were $35 cash per month, and in addition she was furnished room and board in her employer's hotel. Her working hours were from 8:00 a. m. to 12 noon and from 1:00 p. m. to 5:00 p. m. for six days a week. Tuesday was her day off. On Wednesday evening, November 12, 1942, she had gone to bed in her room in the hotel. Before she retired she opened a window about eight inches from the top. Some time before midnight she felt that the

[1]Reported in 14 N. W. (2d) 861.

room was too cold, so she got out of bed to close the window. She first turned on a floor lamp and could therefore see without any difficulty. She could not reach the top of the window while standing on the floor, so she carried a light, straight-backed chair to the window. It was the kind of chair one would expect to find in a hotel room and not broken or defective in any way. She stood on this chair to push the window up. When it was almost, if not entirely, closed, she shifted her weight toward the "end of the chair." It started to tip, and she fell to the floor and was injured. It was also stipulated that the accident was caused solely by reason of her failure to maintain her balance and not by any defective or unusual conditions existing in the premises at the time of the accident, and that it would not have happened if she had not lost her balance. The industrial commission, one member dissenting, held that the injury arose out of and in the course of her employment and awarded compensation.

The workmen's compensation act requires that the injury, to be compensable, must be the result of an accident arising out of and in the course of the employment. Minn. St. 1941, § 176.02 (Mason St. 1940 Supp. § 4272-1).

Employer contends that it appears as a matter of law that the accident sustained by employe did not arise out of or in the course of her employment, and that her activity at the time of the accident was purely personal and private and was neither incidental to nor related to her employment.

Employe had regular hours of work. The stipulated facts show that she was not subject to call nor required to put in any time in excess of the hours stated. There is nothing in the facts indicating that she was required to board and room at the place of her employment. The arrangement was simply a part of her compensation. The accident happened when she was off duty. It was not caused by a hazard or danger or defect on the premises or by anything attributable to or peculiar to the premises, but solely because she lost her balance. The furnishing of sleeping accommodations to employe as part of her compensation did not cause or have any

bearing on her accident. The room was no different from any other sleeping room.

We feel that a résumé of some of the holdings of this and other courts will be helpful in a determination of the question presented.

In Novack v. Montgomery Ward & Co. 158 Minn. 495, 498, 198 N. W. 290, 292, where the court discussed the meaning of the terms "in the course of employment" and "arising out of employment," it said:

"The injury is received 'in the course of' the employment when it comes while the employe is doing his work. It may be received 'in the course of the employment' and still have no causal connection with it. State ex rel. [Duluth Brg. & Malting Co.] v. District Court, 129 Minn. 176, 151 N. W. 912. 'In the course of' refers to the time, place and circumstances under which the accident takes place. It may be 'in the course of the employment' and yet the employe may be standing still and not physically moving in his work. Kaletha v. Hall Mercantile Co. 157 Minn. 290, 196 N. W. 261. He is still included when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do. It 'arises out of' the employment when it reasonably appears from all the facts and circumstances, that there is a causal connection between the conditions which the employer puts about the employe and the resulting injury. If the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. * * * The moving cause of danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business of the employer and not independent of the relation of employment. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." (Citing cases.)

In Rautio v. International Harv. Co. 180 Minn. 400, 405, 231 N. W. 214, 216, where this court again defined the term "out of," it said:

"* * * The accident, in order to arise 'out of' the employment, must be of such nature that the risk might have been contemplated by a reasonable person, when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.

"When a workman is injured while doing a thing outside and unconnected with what he is employed to do he is not under the protection of the act."

See Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4; Kaselnak v. Fruit Dispatch, 205 Minn. 198, 285 N. W. 482.

In Cavilla v. Northern States Power Co. 213 Minn. 331, 336, 6 N. W. (2d) 812, 815, this court stated:

"* * * we have said that an injury is received in the course of employment 'when it comes while the employe is doing his, work' and that 'it "arises out of" the employment when it reasonably appears from all the facts and circumstances, that there is a causal connection between the conditions which the employer puts about the employe and the resulting injury.'"

In Bloomquist v. Johnson Grocery, 189 Minn. 285, 286, 249 N. W. 44, the employe, a grocery clerk, was injured by a beetle or bug flying into his eye while he was at work. This court, holding that the injury did not arise out of the employment, said: "* * * we have the limitation that to be compensable the injury must be 'caused by accident, arising out of' the employment." In that case employe was engaged in the course of his employment during his regular working hours, when his presence was required on the premises. But because the appearance of a beetle or bug was not a hazard incident to or peculiar to his employment, the employe was denied compensation.

In Daly v. Bates & Roberts, 224 N. Y. 126, 120 N. E. 118, employe was a laundress in a hotel with stated hours of employment. Her compensation included board and lodging, with the privilege after hours to use employer's laundry. One evening she was engaged in doing work in the laundry personal to herself and was injured while so working. The court held that her labor there was entirely disassociated from the work of her employer and said (224 N. Y. 128, 120 N. E. 119):

"* * * The fact that she was permitted to use the laundry for her personal benefit did not change the relation of the parties. * * *

"Had the claimant remained in her room in the hotel and engaged her time in mending her clothing, and while so engaged met with an accident by reason of using a scissors, it could scarcely be held that such injury would arise out of and in the course of her employment or was incidental thereto."

In Kane v. Barbe, 210 App. Div. 558, 560, 206 N. Y. S. 444, 446, the employe, a cook, lived at the home of her employer. About two hours after the completion of her evening's work, she went up to her room and, while undressing, fell out of a chair and broke her wrist. There was no evidence that she had duties to perform after her day's work. The court said: "This certainly cannot be held to be an injury which arose out of her employment."

In Kraft v. West Hotel Co. 193 Iowa 1288, 188 N. W. 870, 31 A. L. R. 1245, the employe was a chambermaid in a hotel. The use of a room was part of her wages. When she finished her work at 3:00 p. m. she was free to do as she pleased. She was not on duty at night or subject to call. The accident happened at 10:30 in the evening. She was burned while attempting to extinguish the blaze from an alcohol lamp which she had been using to heat a curling iron to curl her hair. It was held that her injury did not arise out of or in the course of her employment. The court said (193 Iowa 1290, 1292, 188 N. W. 871, 872):

"* * * The fact that this claimant was living in the hotel at the time of the injury is not material or controlling in any sense. Had

she lived at her mother's home or in an apartment 16 blocks remote, the same injury might have happened that did happen. Had she been a nurse, schoolteacher, stenographer, or clerk, the same injury could have happened that did happen. * * *

"Under the facts of the instant case no reasonable person can say that the injury which claimant received can be fairly traced to her employment as a contributing proximate cause."

71 C. J., Workmen's Compensation Act, § 437, covers our situation. It is there stated:

"* * * Everything, however, which happens to an employee occupying quarters, the rental of which he receives as part of his compensation, is not attributable to the dangers or risks of his employment, and an injury caused by such personal acts, disassociated from his employment, as would be likely to occur anywhere and in any place that the employee happened to live does not arise out of the employment."

Respondent cites State ex rel. Radisson Hotel v. District Court, 143 Minn. 144, 172 N. W. 897, and Margoles v. Saxe, 191 Minn. 358, 254 N. W. 457, in support of the commission's order. In both of those cases the employe was on duty all the time. Therefore the cases are clearly distinguishable.

In McKenzie v. Railway Exp. Agency, Inc. 205 Minn. 231, 233, 285 N. W. 529, 530, this court stated: "Acts of the employe necessary for his comfort and convenience, though strictly personal to himself, are incidental to the service, and injuries sustained while performing them are compensable," citing Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W. 261. In both of those cases the injuries were sustained while the employe was attending to needs and comforts strictly personal to himself *during his hours of work,* and the language of the court is directed to that situation. And see, also, Sudeith v. City of St. Paul, 210 Minn. 321, 298 N. W. 46.

Respondent places much reliance on the recent case of Le Bar v. Ewald Bros. Dairy, 217 Minn. 15, 13 N. W. (2d) 729. In that case the employe was injured while playing softball after his regular

hours of employment, and the commission's award of compensation was affirmed. The court said that the accidental injury could be compensated for as arising out of and in the course of the employment only if the game then being played was "incident to and a part of the partnership's business." It was evident that the playing of these games was a part of the advertising program of the employer. This court said (217 Minn. 19, 20, 13 N. W. [2d] 730):

"* * * From the activities displayed by the Ewalds in athletics for more than ten years, the inference is at hand that they, at least, concluded that these contest games were essential or desirable for their dairy business * * *. We are of the opinion that the industrial commission could justifiably find from the way in which the Ewald Bros. partnership had supported game contests of their employes that it was deemed by them an essential part of their business; hence, that respondent's accidental injury arose out of and in the course of his employment."

Stansberry v. Monitor Stove Co. 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316, cited by relator, is readily distinguishable from the instant case. There the terms of employment required the salesman to travel and stop at hotels. His death resulted from a fire in a hotel which was beyond his control. The accident was not caused by the employe's activity in behalf of his own personal comfort and welfare.

In the instant case, employe was injured when she lost her balance while standing on a chair to close the window. This was an act done for her own comfort and personal to herself. The accident happened when she was off duty. The moving cause of danger was not "peculiar to the work" but was "common to the neighborhood." It was not "incidental to the character of the business of the employer," but "was independent of the relation of employment." It does not "appear to have had its origin in a risk connected with the employment," and it did not flow from "that source as a rational consequence." Novack v. Montgomery Ward & Co. 158 Minn. 498, 198 N. W. 292, *supra*.

We hold that the injury did not arise out of respondent's employment.

Reversed.